# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAVID SCHERMERHORN, *et al.*,

      Plaintiffs,

v.

THE STATE OF ISRAEL, *et al.*,

      Defendants.

Case No. 16-cv-49-ABJ

District Judge Amy Berman Jackson

## DEFENDANTS' REPLY MEMORANDUM
## IN SUPPORT OF THE MOTION TO DISMISS

R. Reeves Anderson
ARNOLD & PORTER LLP
370 Seventeenth Street
Suite 4400
Denver, CO 80202-1370
Tel: (303) 863-1000
Fax: (303) 832-0428
reeves.anderson@aporter.com

John B. Bellinger, III
Robert N. Weiner
Robert A. DeRise
ARNOLD & PORTER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Tel: (202) 942-5000
Fax: (202) 942-5999
john.bellinger@aporter.com

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................. 2

STANDARD OF REVIEW .................................................................................................. 3

ARGUMENT ...................................................................................................................... 3

I.    AS A FOREIGN SOVEREIGN, ISRAEL AND ITS MINISTRIES ARE IMMUNE
      FROM THIS SUIT ...................................................................................................... 3

      A.  Military Operations Fall Outside All Immunity Exceptions ............................... 3

      B.  The FSIA's Terrorism Exception Does Not Apply ............................................. 5

      C.  The FSIA's Non-Commercial Tort Exception Does Not Apply .......................... 8

            1.  A U.S. Flag Vessel on the High Seas Is Not Territory of the United States ........ 8

            2.  The Discretionary Function Exclusion Precludes Jurisdiction .................... 12

II.   THE POLITICAL QUESTION DOCTRINE BARS THIS SUIT .......................................... 13

      A.  Matters of Foreign Affairs Are Committed to the Political Branches ............... 14

      B.  This Court Lacks Judicially Discoverable Standards ....................................... 16

      C.  Adjudication Risks Conflict with Coordinate Branches of Government .......... 18

III.  THE ACT OF STATE DOCTRINE BARS THIS SUIT ..................................................... 19

IV.   THE COMPLAINT FAILS TO STATE A CLAIM .......................................................... 22

      A.  Plaintiffs' Allegations Fail on Their Merits .................................................... 22

      B.  Plaintiffs' Claims Are Untimely ..................................................................... 23

V.    ISRAEL IS THE MORE SUITABLE FORUM TO RESOLVE THIS DISPUTE ................... 24

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Arce v. Garcia,*
   434 F.3d 1254 (11th Cir. 2006) ............................................................................ 23

* *Argentine Repub. v. Amerada Hess Shipping Corp.,*
   488 U.S. 428 (1989) ................................................................................... 10, 13

*Baker v. Carr,*
   369 U.S. 186 (1962) ............................................................................................. 14

*Banco National de Cuba v. Sabbatino,*
   376 U.S. 398 (1964) ............................................................................................. 21

*Bancoult v. McNamara,*
   445 F.3d 427 (D.C. Cir. 2006) ............................................................................. 16

*Belhas v. Ya'alon,*
   515 F.3d 1279 (D.C. Cir. 2008) ............................................................................. 2

*Boumediene v. Bush,*
   553 U.S. 723 (2008) ............................................................................................. 15

*The State of Israel v. The Ship Estelle*
   CA 7307/14 (2016) (Isr.) ...................................................................................... 25

*Corrie v. Caterpillar, Inc.,*
   503 F.3d 974 (9th Cir. 2007) .................................................................................. 2

*Cunard S.S. Co. v. Mellon,*
   262 U.S. 100 (1923) ............................................................................................... 9

*Daliberti v. Repub. of Iraq,*
   97 F. Supp. 2d 38 (D.D.C. 2000) ......................................................................... 21

*De Csepel v. Repub. of Hungary,*
   808 F. Supp. 2d 113 (D.D.C. 2011) ....................................................................... 3

*Doe v. Bin Laden,*
   663 F.3d 64 (2d Cir. 2011) ..................................................................................... 6

*Doe v. Fed. Democratic Repub. of Eth.,*
   No. 14-cv-372, 2016 WL 3023996 (D.D.C. May 24, 2016) .................................. 3

---

* Asterisks indicate authorities upon which counsel chiefly relies, pursuant to Local Rule 7(a).

* *Doe v. State of Israel*,
    400 F. Supp. 2d 86 (D.D.C. 2005)..............................................................................2, 14, 19

*Doe v. State of Israel*,
    No. 02-cv-1431 (D.D.C. Oct. 3, 2003), ECF 42......................................................................15

* *Dogan v. Barak*,
    No. 15-cv-8130, 2016 WL 6024416 (C.D. Cal. Oct. 13, 2016) .................1, 2, 3, 5, 14, 15, 19

* *El-Shifa Pharm. Indus. Co. v. United States*,
    607 F.3d 836 (D.C. Cir. 2010).......................................................................................13, 16, 17

*Frolova v. Union of Soviet Socialist Republics*,
    558 F. Supp. 358 (N.D. Ill. 1983)............................................................................................4

*Hamdan v. Rumsfeld*,
    548 U.S. 557 (2006) ..............................................................................................................15

*Hourani v. Mirtchev*,
    796 F.3d 1 (D.C. Cir. 2015)...................................................................................................20

*Hwang Geum Joo v. Japan*,
    413 F.3d 45 (D.C. Cir. 2005)..................................................................................................14

*Jerez v. Repub. of Cuba*,
    775 F.3d 419 (D.C. Cir. 2014).................................................................................................3

*Joseph v. Office of the Consulate Gen. of Nigeria*,
    830 F.2d 1018 (9th Cir. 1987).................................................................................................12

*Kalamazoo Spice Extraction Co. v. Provisional Military Gov't of Socialist Eth.*,
    729 F.2d 422 (6th Cir. 1984)...................................................................................................21

*Kiobel v. Royal Dutch Petroleum Co.*,
    133 S. Ct. 1659 (2013) ............................................................................................................11

* *Lam Mow v. Nagle*,
    24 F.2d 316 (9th Cir. 1928)...............................................................................................9, 10

*Lawrence v. Florida*,
    549 U.S. 327 (2007) ................................................................................................................23

*Lin v. United States*,
    No. 15-cv-295, 2016 WL 1273187 (D.D.C. Mar. 31, 2016)....................................................3

*MacArthur Area Citizens Ass'n v. Repub. of Peru*,
    809 F.2d 918 (D.C. Cir. 1987)............................................................................................8, 12

*Maltina Corp. v. Cawy Bottling Co.*,
  462 F.2d 1021 (5th Cir. 1972) ........................................................................ 20

*Matar v. Dichter*,
  563 F.3d 9 (2d Cir. 2009) ................................................................................ 2

*McKeel v. Islamic Repub. of Iran*,
  722 F.2d 582 (9th Cir. 1983) ..................................................................... 10, 11

*McKesson Corp. v. Islamic Repub. of Iran*,
  672 F.3d 1066 (D.C. Cir. 2012) ..................................................................... 7

*Mohammadi v. Islamic Repub. of Iran*,
  782 F.3d 9 (D.C. Cir. 2015) ............................................................................ 6

*Moradi v. Repub. of Iran*,
  77 F. Supp. 3d 57 (D.D.C. 2015) .................................................................... 6

*Norman v. United States*,
  467 F.3d 773 (D.C. Cir. 2006) .................................................................. 23, 24

*OBB Personenverkehr AG v. Sachs*,
  136 S. Ct. 390 (2015) ...................................................................................... 8

*Oetjen v. Cent. Leather Co.*,
  246 U.S. 297 (1918) ...................................................................................... 19

*Permanent Mission of India to the United Nations v. City of New York*,
  551 U.S. 193 (2007) ........................................................................................ 4

*Persinger v. Islamic Repub. of Iran*,
  729 F.2d 835 (D.C. Cir. 1984) ............................................................ 8, 10, 11

*In re Philippine Nat'l Bank*,
  397 F.3d 768 (9th Cir. 2005) ........................................................................ 20

*Price v. Socialist People's Libyan Arab Jamahiriya*,
  294 F.3d 82 (D.C. Cir. 2002) ............................................................ 5, 22, 23

*Ramirez de Arellano v. Weinberger*,
  745 F.2d 1500 (D.C. Cir. 1984) .................................................................... 21

*Ross v. McIntyre*,
  140 U.S. 453 (1891) ........................................................................................ 9

*Saltany v. Reagan*,
  886 F.2d 438 (D.C. Cir. 1989) .................................................................... 4, 5

*Samantar v. Yousuf*,
  560 U.S. 305 (2010) ..................................................................................................5

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993) .............................................................................................4, 5

*Scharrenberg v. Dollar S.S. Co.*,
  245 U.S. 122 (1917) ..................................................................................................9

*Schneider v. Kissinger*,
  412 F.3d 190 (D.C. Cir. 2005)..........................................................................15, 18

*Simon v. Repub. of Iraq*,
  529 F.3d 1187 (D.C. Cir. 2008).................................................................................7

*Sloan v. U.S. Dep't of Hous. & Urban Dev.*,
  236 F.3d 756 (D.C. Cir. 2001).................................................................................13

* *Smith v. Socialist People's Libyan Arab Jamahiriya*,
  101 F.3d 239 (2d Cir. 1996) ...............................................................................10, 11

*Tarros S.p.A. v. United States*,
  982 F. Supp. 2d 325 (S.D.N.Y. 2013) ....................................................................18

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 109 (2d Cir. 2013) .....................................................................................6

*Underhill v. Hernandez*,
  65 F. 577 (2d Cir. 1895) ...........................................................................................3

*United States v. Flores*,
  289 U.S. 137 (1933) ................................................................................................10

*United States v. Gaubert*,
  499 U.S. 315 (1991) ................................................................................................12

*United States v. Riker*,
  670 F.2d 987 (11th Cir. 1982) .................................................................................11

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp.*,
  493 U.S. 400 (1990) ................................................................................................19

* *Wu Tien Li-Shou v. United States*,
  777 F.3d 175 (4th Cir. 2015).............................................................................12, 18

*Zivotofsky ex. rel. Zivotofsky v. Clinton*,
  132 S. Ct. 1421 (2012) ............................................................................................16

**Statutes**

28 U.S.C. § 1603(c) ..................................................................................................... 8

28 U.S.C. § 1605(a)(5) ............................................................................................ 8, 10

28 U.S.C. § 1605(a)(7) ................................................................................................ 6

28 U.S.C. § 1605A ............................................................................................... 5, 6, 7

28 U.S.C. § 1605A(a)(2) .............................................................................................. 5

Pub. L. No. 114-222, 130 Stat. 852 ............................................................................. 7

**Other Authorities**

154 Cong. Rec. S54-01 (Jan. 22, 2008) ...................................................................... 7

Fed. R. Civ. P. 12(b)(1) ............................................................................................... 3

H.R. Rep. No. 110-477, 2007 WL 4403679 (2007) (Conf. Rep.) ................................ 7

Restatement (Third) on Foreign Relations § 401 ....................................................... 11

U.S. Const. amend. XIV .......................................................................................... 9, 10

U.S. Const. amend. XVIII ........................................................................................... 10

United States' Br. in Supp. of Mot. to Dismiss, *Doe v. State of Israel*,
   No. 02-cv-1431 (D.D.C. Oct. 31, 2002), ECF 8 ................................................... 15

## INTRODUCTION

Plaintiffs cast their Complaint as a garden-variety "action in tort." That blithe characterization conflicts with Plaintiffs' actual claims. Plaintiffs sue the State of Israel and its Ministries of Defense, Foreign Affairs, Justice, and Public Security for a military operation by the Israel Defense Forces ("IDF") to enforce Israel's naval blockade of the Gaza Strip. Israel intercepted Plaintiffs' vessel, the *Challenger I*, as it tried to run the blockade. Plaintiffs concede that the "gravamen" of their suit is that Israel acted "without justification"—a claim that second-guesses Israel's military operation and challenges Israel's policy to establish and enforce an effective naval blockade of the Gaza Strip to protect its national security. None of these matters are within the competence of the U.S. courts. Indeed, a federal district court just dismissed a similar suit against Israel's former Minister of Defense for planning and authorizing the Flotilla operation. *Dogan v. Barak*, No. 15-cv-8130, 2016 WL 6024416 (C.D. Cal. Oct. 13, 2016).

The lack of any precedent for Plaintiffs' claims is a telltale sign that this case is in actuality a political protest against Israel, not a legitimate tort suit. Plaintiffs invite this Court to blaze new legal trails. They urge the Court to be the first to hold that the exception to immunity for torts by a foreign sovereign "in the United States" covers torts on U.S.-flagged vessels anywhere in the world. They further urge the Court to be the first to rewrite the FSIA's "terrorism exception," potentially subjecting *every* foreign sovereign to suit in the courts of the United States, despite statutory text and binding D.C. Circuit precedent holding that only "state sponsors of terrorism" designated by the Secretary of State may lose immunity under the exception. Far from designating Israel a "state sponsor of terrorism," the United States has recognized Israel as a key ally in the war on terror. And Plaintiffs urge the Court not only to be the first to entangle itself in the political thicket of second-guessing the security policies and military operations of that key U.S. ally, but to break with every other court that has considered

1

and rejected similar challenges. *E.g.*, *Barak*, 2016 WL 6024416; *Matar v. Dichter*, 563 F.3d 9

(2d Cir. 2009); *Belhas v. Ya'alon*, 515 F.3d 1279 (D.C. Cir. 2008); *Doe v. State of Israel*, 400 F.

Supp. 2d 86 (D.D.C. 2005); *see also Corrie v. Caterpillar, Inc.*, 503 F.3d 974 (9th Cir. 2007).

For this case to proceed, Plaintiffs would need to clear these hurdles, and more. Plaintiffs

can clear none of them. This Court should dismiss with prejudice.

## BACKGROUND

In its motion to dismiss, Israel provided context for its interdiction of the Gaza Flotilla on

May 31, 2010—context that was completely lacking from Plaintiffs' Complaint. Motion to

Dismiss ("MTD") at 3–11. Plaintiffs "take serious issue" with this background, Opposition Brief

("Opp.") at 2, even though it is drawn from the report of the U.N. Palmer Commission charged

by the U.N. Secretary General with investigating the Flotilla incident ("U.N. Palmer

Commission" and "U.N. Rpt." respectively), upon which Plaintiffs themselves rely for many of

the assertions in their Complaint.[1] Plaintiffs do not dispute, however, that: (1) Israel's blockade

of the Gaza Strip arose from the serious military threat Israel faces from militant groups in Gaza,

particularly Hamas, MTD 4–6;[2] (2) Israel warned all vessels about the blockade, its terms, and

coordinates, MTD 6–7; (3) Israel tried to convince Flotilla participants to deliver aid through an

Israeli port, offering even to deliver the aid itself, MTD 8–9; and (4) the Israeli Navy warned the

*Challenger I* again and again, but the vessel disregarded the warnings and tried to evade the

---

[1] The Israeli government established an independent high-level commission, the "Turkel
Commission," headed by a former Israeli Supreme Court justice and advised by international
observers and legal experts, that investigated the Flotilla incident and issued a 300-page report.
Plaintiffs' claim that the "weight of [Israel's] narrative" in its motion to dismiss came from the
Turkel Report is wildly incorrect. Opp. 3. Israel cited the Turkel Report *once*, MTD 4 n.2, not for
the truth of its findings, but to inform this Court that Israel had conducted a thorough
investigation of this matter. Israel's reference to the U.N. Report in providing background does
not alter Israel's formal reservations and disagreement with aspects of the report. MTD 5 n.6.

[2] Israel's articulation of the national security reasons to implement and enforce its blockade,
MTD 3–11, was not, as Plaintiffs described, "insinuation" they have links with terrorists, Opp. 6.

blockade, MTD 10. The recent *Barak* decision, which dismissed the suit against former Israeli

Defense Minister Barak, also summarizes the background and facts of the Flotilla incident.

*Barak*, 2016 WL 6024416, at *1–3.

## STANDARD OF REVIEW

The parties agree that (1) the Court begins with the presumption that it lacks subject

matter jurisdiction; (2) Plaintiffs have the burden of demonstrating subject matter jurisdiction;

and (3) Plaintiffs' factual allegations demand closer scrutiny under a Rule 12(b)(1) motion. MTD

11. Contrary to Plaintiffs' contention, however, Israel need not show that Plaintiffs' claims are

"wholly insubstantial and frivolous" or "flimsy on their face." Opp. 8. This Court has applied

that standard to the FSIA's expropriation exception, *De Csepel v. Repub. of Hungary*, 808 F.

Supp. 2d 113, 128 (D.D.C. 2011), not to the FSIA's terrorism or non-commercial tort exceptions

at issue here, *e.g.*, *Doe v. Fed. Democratic Repub. of Eth.*, No. 14-cv-372, 2016 WL 3023996, at

*7–8 (D.D.C. May 24, 2016); *Lin v. United States*, No. 15-cv-295, 2016 WL 1273187, at *10

(D.D.C. Mar. 31, 2016); *Jerez v. Repub. of Cuba*, 775 F.3d 419, 423–24 (D.C. Cir. 2014).

## ARGUMENT

## I.    AS A FOREIGN SOVEREIGN, ISRAEL AND ITS MINISTRIES ARE IMMUNE FROM THIS SUIT

Plaintiffs admit that exercising jurisdiction over Israel in this case would be

unprecedented. No court has ever accepted Plaintiffs' strained interpretations of the FSIA's

terrorism and non-commercial tort exceptions. Because Plaintiffs' theories conflict with the text,

history, and design of the FSIA, this Court should dismiss for lack of subject matter jurisdiction.

### A.    Military Operations Fall Outside All Immunity Exceptions

Sovereign immunity has long shielded the military operations of a foreign state from U.S.

jurisdiction. *Underhill v. Hernandez*, 65 F. 577, 581 (2d Cir. 1895), *aff'd* 168 U.S. 250 (1897)

("officers in command of armed forces . . . their subordinates and soldiers are not in any case amenable to the civil or criminal laws of a foreign state" for official acts). Contrary to Plaintiffs' assertion, for purposes of assessing sovereign immunity, the critical distinction between such public acts and private or commercial acts extends well beyond the FSIA's commercial activity exception. Courts apply the distinction to uphold immunity outside that context. *E.g.*, *Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193, 199–201 (2007) (considering public/private distinction under the FSIA immovable property exception); *Frolova v. Union of Soviet Socialist Republics*, 558 F. Supp. 358, 362–63 (N.D. Ill. 1983) (holding non-commercial tort exception inapplicable because the FSIA "specifically retained sovereign immunity for a foreign state's public acts," and "[t]he denial of immigration is a public act").

Plaintiffs cannot evade the controlling precedent on this point. In *Saltany v. Reagan*, 886 F.2d 438 (D.C. Cir. 1989), the D.C. Circuit found that the United Kingdom was immune from tort claims arising from air strikes in Libya because the Supreme Court "unanimously and unequivocally" had held "that a foreign state's use of military force allegedly in violation of international law fell outside any of the exceptions to sovereign immunity provided by the FSIA." *Id.* at 440 (citing *Argentine Repub. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 437–42 (1989)). On this tort claim, jurisdiction was "utterly foreclosed," and plaintiffs' case "clearly doomed." *Id.* at 440–41. Contrary to Plaintiffs' contention here, *Saltany* did not rest on the FSIA's treaty exception or on the assumption that "military activities are not 'commercial' in nature." Opp. 17–18. *Saltany* controls this suit.

Nor can Plaintiffs disregard *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993), on the ground that the case involved the commercial activity exception. Opp. 17. *Nelson* held that "a foreign state's exercise of the power of its police" was, "for purposes of the restrictive theory" of

immunity, "peculiarly sovereign in nature." 507 U.S. at 361. The police conduct challenged in

*Nelson* was "sovereign activity immune from the subject matter jurisdiction of United States

courts under the [FSIA]." *Id.* at 363. Applying this logic in a *non*-commercial case, the D.C.

Circuit precluded jurisdiction over claims for "wrongful arrest, imprisonment, and torture,"

because they were traditionally "immunized forms of state activity." *Price v. Socialist People's*

*Libyan Arab Jamahiriya*, 294 F.3d 82, 88 (D.C. Cir. 2002). The court in *Barak* also dismissed

claims challenging this "sanctioned military operation whereby the IDF would intercept [the

Flotilla] as it approached Israel's naval blockade," as "[c]ourts are near-uniform in granting

immunity to foreign officials in such circumstances." *Barak*, 2016 WL 6024416, at *9.[3]

This binding precedent makes clear that quintessentially public acts of a foreign state,

such as the exercise of military power at issue in this case, are not justiciable under "any of the

[FSIA] exceptions." *Saltany*, 886 F.2d at 440 (citation omitted). Plaintiffs cannot escape this bar

by disguising their political protest as a tort case under the noncommercial tort exception.

**B.      The FSIA's Terrorism Exception Does Not Apply**

Controlling D.C. Circuit precedent likewise forecloses Plaintiffs' argument that the

terrorism exception applies to foreign countries, like Israel, that the United States obviously has

not designated as state sponsors of terrorism. The terrorism exception (§ 1605A) provides, in

relevant part, that a "court shall hear a claim under this section *if* the foreign state was designated

as a state sponsor of terrorism at the time the act described in paragraph (1) occurred, or was so

designated as a result of such act." 28 U.S.C. § 1605A(a)(2) (emphasis added). The foreign state

must be designated a "state sponsor of terrorism" under the exception. Plaintiffs claim that this

---

[3] Because the defendant in *Barak* was a foreign official rather than a sovereign, the Court held
that immunity depended upon related common law immunity principles, but not the FSIA itself.
*See Samantar v. Yousuf*, 560 U.S. 305 (2010).

provision grants jurisdiction if the foreign country is designated as a state sponsor, but does not preclude jurisdiction if the state is *not* so designated. But Plaintiffs forget that this provision is an *exception* to sovereign immunity. A foreign state not designated as a sponsor of terror falls outside the exception, and thus is immune.

This was the D.C. Circuit's holding in *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9 (D.C. Cir. 2015): "[§ 1605A] *requires* that [ ] the foreign country was designated a 'state sponsor of terrorism at the time [of] the act,'" in order to establish jurisdiction under the FSIA's terrorism exception. *Id.* at 14 (emphasis added). Other courts are uniformly in accord. *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 109, 115 n.7 (2d Cir. 2013) ("§ 1605A['s ] . . . exception is only available against a nation that has been designated by the United States government as a state sponsor of terrorism at the time of, or due to, a terrorist act"); *Moradi v. Repub. of Iran*, 77 F. Supp. 3d 57, 65 (D.D.C. 2015) ("All of the conditions necessary to establish this Court's jurisdiction to hear plaintiffs' claims have been satisfied," including the "requirement[ ]" that Iran was designated a state sponsor of terrorism). Accordingly, courts also have rejected every attempt to apply the terrorism exception to a defendant *not* designated as a state-sponsor of terrorism. *Doe v. Bin Laden*, 663 F.3d 64, 66 (2d Cir. 2011) (§ 1605A "is not available against Afghanistan, all agree, because the State Department has not designated Afghanistan as a state sponsor of terrorism"); MTD 15–16 (citing cases holding that § 1605A does not apply to Nigeria, Saudi Arabia, or the Republic of Chile).

Plaintiffs concede that the pre-2008 version of the "terrorism exception" (28 U.S.C. § 1605(a)(7)) applied only to designated "state sponsor[s] of terrorism." Opp. 23. Plaintiffs argue, however, that Congress in 2008 "abandoned the designation requirement . . . and left open the possibility that a non-designated state could be a defendant." Opp. 24. But there is not the

slightest indication in the language of the statute or anywhere else that Congress intended such a radical change in foreign sovereign immunity, much less that Congress upended long-standing and settled precedent *sub silentio*, or sought to subject the United States' "committed counterterrorism partner[s]," like Israel, to suit as terrorist states. MTD 16 n.11.

On the contrary, the legislative history of § 1605A confirms that Congress intended to maintain the exception's restriction to countries designated as state sponsors of terrorism. The House Report concludes that "[c]ourts would have jurisdiction to hear a claim brought against a foreign state that was designated as a state sponsor of terrorism at the time of the terrorist act, or was so designated as a result of the act, and which remains designated as a state sponsor of terrorism at the time a claim is filed." H.R. Rep. No. 110-477, at 1001, 2007 WL 4403679 (2007) (Conf. Rep.). The amendments created a federal cause of action and removed additional protections for state sponsors of terrorism, but the legislative history does not suggest Congress intended to expand the category of sovereign defendants beyond designated state sponsors. *Simon v. Repub. of Iraq*, 529 F.3d 1187, 1190 (D.C. Cir. 2008), *rev'd on other grounds*, *Repub.. of Iraq v. Beaty*, 556 U.S. 848 (2009); *see also* 154 Cong. Rec. S54-01, S55 (Jan. 22, 2008).

Plaintiffs' aberrant interpretation of § 1605A would abrogate the FSIA's "broad grant of immunity for foreign sovereigns," *McKesson Corp. v. Islamic Repub. of Iran*, 672 F.3d 1066, 1075 (D.C. Cir. 2012), and expose all sovereigns to suit irrespective whether the Executive designated them a state sponsor of terror, when there is no support in the statutory text, legislative history, or precedent for such an expansion to this exception to immunity.[4]

---

[4] In addition, if Plaintiffs' reading of § 1605A were correct, the recently enacted Justice Against Sponsors of Terrorism Act, which creates a new exception to sovereign immunity purportedly to allow Saudi Arabia to be sued for the 9/11 attacks, would have been unnecessary because Saudi Arabia—which is not a designated state sponsor of terrorism—would already have been subject to suit under § 1605A. *See* Pub. L. No. 114-222, 130 Stat. 852.

### C.      The FSIA's Non-Commercial Tort Exception Does Not Apply

#### 1.      A U.S. Flag Vessel on the High Seas Is Not Territory of the United States

The FSIA's non-commercial tort exception expressly applies only to acts that occur within the geographic territory, "continental or insular," of the United States. 28 U.S.C. §§ 1603(c), 1605(a)(5). Plaintiffs nevertheless invite this Court to expand this exception to cover events that occurred on a boat in the Mediterranean with a U.S. registration. Plaintiffs concede that no court has ever adopted this interpretation, Opp. 13–14, and they identify nothing in the statutory text or legislative history to anchor their reading. Instead, as Defendants explained, Plaintiffs' theory extrapolates from the legal fiction of the law of the flag. That fiction has nothing to do with sovereign immunity. MTD 19–20.

A State is "presumptively immune from the jurisdiction of United States courts unless one of the [FSIA's] express exceptions to sovereign immunity applies." *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 394 (2015). As the D.C. Circuit has held, "the legislative history [of the non-commercial tort exception] counsels that the exception should be narrowly construed so as not to encompass the farthest reaches of common law." *MacArthur Area Citizens Ass'n v. Repub. of Peru*, 809 F.2d 918, 921 (D.C. Cir. 1987). The legislative history is devoid of any indication that Congress intended to limit the immunity that foreign sovereigns otherwise enjoy by authorizing federal court jurisdiction over foreign sovereigns beyond the physical territory of the United States. *Persinger v. Islamic Repub. of Iran*, 729 F.2d 835, 840 (D.C. Cir. 1984).

Registering under the U.S. flag does not actually or constructively transform the deck of a ship on the high seas into a small, peripatetic patch of U.S. soil. Plaintiffs' contrary argument conflates the flag state's jurisdiction and its territory. *E.g.*, Opp. 10, 12 (stating that U.S. flag vessels on the high seas "are actually part of the territory of the United States"). In making that

argument, Plaintiffs brush aside a long line of U.S. judicial precedents recognizing that the law of the flag is a legal construct of limited application, not a territorial expansion. Nearly a century ago, the Supreme Court in *Scharrenberg v. Dollar S.S. Co.*, 245 U.S. 122 (1917), rejected as "fanciful and unsound" the contention that "a ship of American registry . . . is part of the territory of the United States." *Id.* at 127. The Court observed that

> it is, of course, true that for the purposes of jurisdiction a ship, even on the high seas, is often said to be a part of the territory of the nation whose flag it flies. But in the physical sense this expression is obviously figurative, and to expand the doctrine to the extent of treating seamen employed on such a ship as working in the country of its registry is quite impossible.

*Id.* (citation omitted). Even the case on which Plaintiffs principally rely acknowledges the difference between U.S. vessels, which are sometimes considered "*constructively* as territory of the United States," and land or areas "within the *actual* territorial boundaries of the United States." *Ross v. McIntyre*, 140 U.S. 453, 464 (1891) (emphases added).

Thus, for example, a child born to non-U.S. citizen parents aboard a U.S. vessel on the high seas does not acquire U.S. citizenship by birth; the ship is not "the United States" for purposes of the Fourteenth Amendment merely because it flies a U.S. flag. *Lam Mow v. Nagle*, 24 F.2d 316, 317–18 (9th Cir. 1928). In so holding, the Ninth Circuit noted that the law of the flag must be understood in the "qualified or figurative" sense. *Id.* at 317. The court quoted the analysis of the Supreme Court in *Cunard S.S. Co. v. Mellon*, 262 U.S. 100 (1923), in distinguishing this ethereal concept from physical territory:

> Various meanings are sought to be attributed to the term 'territory' in the phrase 'the United States and all territory subject to the jurisdiction thereof.' We are of opinion that it means the regional areas—of land and adjacent waters—over which the United States claims and exercises dominion and control as a sovereign power. *The immediate context and the purport of the entire section show that the term is used in a physical and not a metaphorical sense*—that it refers to areas or districts having fixity of location and recognized boundaries. It now is settled in the United States and recognized elsewhere that the territory subject to [the

> United States'] jurisdiction includes the land areas under its dominion and control, the ports, harbors, bays and other enclosed arms of the sea along its coast and a marginal belt of the sea extending from the coast line outward a marine league, or three geographic miles. This, we hold, is the territory which the amendment designates as its field of operation; and the designation is not of a part of this territory, but of 'all' of it.

24 F.2d at 318 (quoting *Cunard S.S. Co.*, 262 U.S. at 122–23) (citation omitted) (emphasis added).[5] Similarly, the reference to "continental or insular" territory in the definition of "the United States" in the FSIA suggests a "physical" rather than "metaphorical" meaning of the term. And nothing in the text of § 1605(a)(5) indicates that "the United States" refers to anything beyond "areas or districts having fixity of location and recognized boundaries." *Id.*

Accordingly, courts consistently have rejected arguments that attempt to invoke the non-commercial tort exception by interpreting "the United States" to include any location over which the United States exercises jurisdiction, such as U.S. embassies abroad, *e.g.*, *Persinger v. Islamic Repub. of Iran*, 729 F.2d 835 (D.C. Cir. 1984); *McKeel v. Islamic Repub. of Iran*, 722 F.2d 582 (9th Cir. 1983), aircraft flying the U.S. flag, *Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F.3d 239 (2d Cir. 1996), or areas within U.S. admiralty jurisdiction, *Amerada Hess*, 488 U.S. 428. *See* MTD 17–22 (additional examples).

Plaintiffs claim that ships over which the United States, as the flag state, exercises "exclusive, plenary jurisdiction" have a "unique status" that is somehow meaningfully different from that of embassies for purposes of the FSIA. Opp. 11, 14–15. But that argument—like those uniformly rejected in the previous cases—founders on Plaintiffs' conflation of adjudicative and prescriptive jurisdiction. Congress has jurisdiction to regulate extraterritorial conduct, just as it may regulate conduct occurring on U.S. flag vessels located outside U.S. territory. *United States*

---

[5] The Court in *Cunard* was interpreting the terms of the Eighteenth Amendment, but the Ninth Circuit in *Lam Mow* saw no reason to give the term "the United States" in the Fourteenth Amendment a broader construction.

*v. Flores*, 289 U.S. 137, 156 (1933); *United States v. Riker*, 670 F.2d 987, 988 (11th Cir. 1982).

But Congress's exercise of that *prescriptive* authority does not answer the separate question

whether Congress intended to grant federal courts jurisdiction to *adjudicate* claims brought

against foreign sovereigns. *See Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1664

(2013); Restatement (Third) on Foreign Relations § 401.

      The distinction between these two inquiries resolves Plaintiffs' supposed tension between

"deem[ing]" a ship "part of the country's territory for the purposes of prosecuting criminal

offenses, but not in the context of statutory language authorizing pursuit of actions in tort." Opp.

13. The courts of appeals have consistently applied this distinction. *Persinger*, *McKeel*, and

*Smith* demonstrate the difference between prescriptive and adjudicative jurisdiction. As the D.C.

Circuit stated in *Persinger*, "[t]hat Congress has power to exercise jurisdiction over certain

activities at U.S. embassies abroad is not disputed." 729 F.2d at 839; *accord McKeel*, 722 F.2d at

588–89. But for purposes of the non-commercial tort exception, the question—which the court

answered in the negative—was different: "whether Congress, in enacting the FSIA, intended to

exercise its jurisdiction to give courts in this country competence to hear suits against foreign

states for torts committed on United States embassy premises abroad." *Persinger*, 729 F.2d at

839; *accord McKeel*, 722 F.2d at 588–89 (distinguishing jurisdiction over federal crimes

committed in United States embassies from jurisdiction over a foreign sovereign under the

FSIA); *Smith*, 101 F.3d at 246 ("[T]he fact that a location is subject to an assertion of United

States authority does not necessarily mean that it is the 'territory' of the United States for

purposes of the FSIA.").

      Plaintiffs' effort to expand the FSIA exception for torts committed "in the United States,"

to reach all U.S.-flagged vessels throughout the world is novel and unsupported. Acts aboard a

ship sailing on the Mediterranean Sea did not occur "in the United States," and the FSIA's non-commercial tort exception does not apply.

### 2.     The Discretionary Function Exclusion Precludes Jurisdiction

This Court also lacks jurisdiction under the non-commercial tort exception because Plaintiffs' lawsuit challenges paradigmatic discretionary acts by Israel and its Ministries, triggering the discretionary function exclusion. *Wu Tien Li-Shou v. United States*, 777 F.3d 175, 184–86 (4th Cir. 2015). Plaintiffs argue—citing Ninth Circuit precedent—that decisions made "at the operational level" or that concern "implementation" of policies are all outside the discretionary function exclusion. Opp. 20 (citing *Olsen v. Gov't of Mex.*, 729 F.2d 641, 647 (9th Cir. 1984) and *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1518 (9th Cir. 1987)). Plaintiffs contend that their "grievance" is not against "Israeli Government officials who made plans sitting behind desks," but against the IDF soldiers at the "operational level." Opp. 20.

But the Ninth Circuit subsequently overruled the precedent on which Plaintiffs rely. In *Joseph v. Office of the Consulate Gen. of Nigeria*, 830 F.2d 1018 (9th Cir. 1987), the court explained that "[a]t one time, this circuit distinguished between two types of governmental acts: those at the 'planning' level and those at the 'operational' level. The former qualified for the discretionary function exception; the latter did not." *Id.* at 1026 (citing *Olsen*, 729 F.2d at 647). The Ninth Circuit then held: "we have abandoned this approach." *Id.* "The execution of policy decisions by subordinates, even those subordinates at the operational level, comes under the discretionary function exception if the acts involved the exercise of policy judgment." *Id.*

Analyzing the discretionary function exclusion in the Federal Tort Claims Act ("FTCA") a few years later—which precedent is "instructive" in analyzing the analogous FSIA exclusion here, *MacArthur*, 809 F.2d at 922—the Supreme Court rejected a lower court's "holding that the [exclusion] does not reach decisions made at the operational or management level." *United*

*States v. Gaubert*, 499 U.S. 315, 325 (1991). The D.C. Circuit likewise holds that the FTCA's

discretionary function exception . . . does not apply exclusively to policymaking or planning

functions, but rather extends as well to decisions made at the operational level." *Sloan v. U.S.*

*Dep't of Hous. & Urban Dev.*, 236 F.3d 756, 762 (D.C. Cir. 2001). Myriad cases reject

challenges (however characterized) to "military policy judgments, military decisions relating to

numbers of military personnel to be utilized, their deployment, and the kinds of orders that

should be issued in furtherance thereof, decisions regarding the timing of arrests, and border

security decisions," MTD 25 (citing cases), all of which are implicated here, and any of which

would render Israel's conduct discretionary. Plaintiffs do not and cannot offer any refutation.

Opp. 19–21. Israel's challenged conduct falls within the discretionary function exclusion.

Neither the FSIA's terrorism exception nor the noncommercial tort exception covers

Plaintiffs' claims. Because the FSIA is "the sole basis for obtaining jurisdiction over a foreign

state in our courts," the Court must dismiss the Complaint for lack of jurisdiction. *Amerada*

*Hess*, 488 U.S. at 434.

## II.     THE POLITICAL QUESTION DOCTRINE BARS THIS SUIT

Political questions lie at the heart of this suit. Plaintiffs admit that the "gravamen of the

suit" is that Israel "raided a United States-flagged ship on the high seas without justification."

Opp. 18. But whether a military or national security operation "is *justified*—that is, whether it is

warranted or well-grounded—is a quintessential policy choice and value determination" that is

constitutionally committed to the political branches. *El-Shifa Pharm. Indus. Co. v. United States*,

607 F.3d 836, 844 (D.C. Cir. 2010) (en banc) (emphasis added). A U.S. court is not the right

place to litigate the national security justification for Israel's decision to impose a naval blockade

of Gaza, its determination to enforce the blockade against the Flotilla, or its operational

implementation of those judgments.[6] In *Barak*, the court recognized the inseparable political and diplomatic underpinnings of Plaintiffs' claims: "the diplomatic firestorm following this incident, and the precarious state of U.S.-Middle East relations, shows why this dispute should be resolved through diplomacy rather than in the courts." *Barak*, 2016 WL 6024416, at *9.

### A.  Matters of Foreign Affairs Are Committed to the Political Branches

Plaintiffs argue that their claims do not present a political question under any of the six *Baker v. Carr* factors rendering a case nonjusticiable, including the first: a textually demonstrable commitment of the issue to a coordinate branch of government. 369 U.S. 186, 217 (1962). However, Plaintiffs run headlong into this Court's holding in *Doe v. State of Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005), which Plaintiffs try, but fail, to brush aside in a footnote.

In *Doe*, as here, the "[p]laintiffs ask[ed] this Court to declare that Israel's self-defense policies are tantamount to terrorism . . . or some other form of illegal activity." *Id.* at 112. Judge Bates held that "[w]hether plaintiffs dress their claims in the garb of . . . federal statutes, or the tort laws of various states, the character of those claims is, at its core, the same: peculiarly volatile, undeniably political, and ultimately nonjusticiable," so as to "draw the Court into the foreign affairs of the United States." *Id.* Judge Bates reached the same conclusion about similar claims brought against U.S. Executive Branch defendants (President Bush and Secretary Powell), dismissing again on political question grounds. The Court stressed "the highly contentious political nature of [plaintiffs'] claims," including that "Israel is a terrorist state," or that "the United States government has been complicit in . . . Israel's torture, killing and maiming."

---

[6] Plaintiffs argue that, if their allegations fall within one of the FSIA's exceptions, the claim cannot be "removed from judicial determination" as a political question. Opp. 30. That is incorrect. Immunity and the political question doctrine are separate inquiries that each affect the Court's jurisdiction. They can be addressed in any order. *Hwang Geum Joo v. Japan*, 413 F.3d 45, 47–48 (D.C. Cir. 2005).

Memo. & Op. at 14, *Doe v. State of Israel*, No. 02-cv-1431 (D.D.C. Oct. 3, 2003), ECF 42.

These were "political judgments . . . belong[ing] in the domain of political power not subject to

judicial intrusion." *Id*. And as the Executive Branch made clear, whether "Israeli actions are

properly deemed in furtherance of 'internal security' or 'legitimate self defense,' and whether

Israel 'engages in a consistent pattern of gross violations of internationally recognized human

rights'" are "quintessentially within the purview of the political branches (and specifically the

Executive branch)." United States' Br. in Supp. of Mot. to Dismiss at 38–39, *Doe v. State of

Israel*, No. 02-cv-1431 (D.D.C. Oct. 31, 2002), ECF 8.

"It cannot then be denied that decision-making in the areas of foreign policy and national

security is textually committed to the political branches." *Schneider v. Kissinger*, 412 F.3d 190,

195 (D.C. Cir. 2005). As in *Doe*, this Court should not venture into the thicket of decision-

making at the crossroads of U.S. and Israeli foreign and national security policy. Indeed, "the

prolonged diplomatic standoff between Turkey and Israel, as well as the manner in which the

standoff was resolved, vivifies how these incidents are inextricably intertwined with politics,

diplomacy, foreign policy . . . and thus why their resolution is best left to the political branches

of government." *Barak*, 2016 WL 6024416, at *9.

Plaintiffs misread *Hamdan v. Rumsfeld*, 548 U.S. 557 (2006), which did not even address

the political question doctrine, and *Boumediene v. Bush*, 553 U.S. 723 (2008). Plaintiffs argue

that the courts heard those cases even though they were "politically charged" and involved U.S.

"military and national security decisions" of the U.S. Government. Plaintiffs contend that Israel

deserves no greater deference. Opp. 27–28. However, the issue addressed in those cases, the

legal process due to individuals detained by the U.S. Government, is very different than the issue

here: the soundness and legitimacy of Israel's "strategic decision to deploy force or to create

standards to determine whether the use of force was justified or well-founded." *El-Shifa*, 607 F.3d at 844. Over such military matters, "the courts lack [ ] competence," *id*., and Plaintiffs cite no cases to the contrary. Opp. 28–29.

Plaintiffs also rely on *Zivotofsky ex. rel. Zivotofsky v. Clinton*, 132 S. Ct. 1421 (2012), but that holding, too, is off point. Opp. 26, 28–29. *Zivotofsky* required the federal courts to adjudicate the legality of an act of Congress, not the military actions of a foreign sovereign. The Supreme Court held that "[t]he courts are fully capable of determining whether this statute may be given effect," or struck down as unconstitutional. 132 S. Ct. at 1425. To do so, courts would apply "familiar principles of constitutional interpretation," and weigh "textual, structural, and historical" arguments on the Act's interpretation and constitutionality—"[t]his is what courts do." 132 S. Ct. at 1430. What courts *do not do* is evaluate the military actions of a foreign sovereign. By Plaintiffs' own admission, the "gravamen of the suit here" is whether the IDF "raided a United States-flagged ship on the high seas *without justification*." Opp. 18 (emphasis added). Whether Israel was justified in undertaking a military or national security operation, is "a quintessential policy choice and value determination." *El-Shifa*, 607 F.3d at 844.

**B.   This Court Lacks Judicially Discoverable Standards**

Plaintiffs' argument on the second *Baker* factor—a lack of judicially discoverable standards—aims at the wrong target. The issue is not whether the Court could conceivably overcome "logistical difficulties" to order discovery from Israel by "issu[ing] protective orders" or "arrang[ing] depositions at a distance," Opp. 31–32, although that is certainly a concern. The material question is whether there is "'a lack of judicially discoverable and manageable standards' *for resolving the claims*" in this case. *Bancoult v. McNamara*, 445 F.3d 427, 434 (D.C. Cir. 2006) (emphasis added). The claims in this case require adjudication of political questions for which no judicially discoverable and manageable standards exist.

16

The legality of Israel's actions depends squarely upon Israel's justification for enforcing the blockade of Gaza, as some authorities conclude that a blockade that is enforced selectively is not legal. U.N. Rpt. App'x ¶ 29 (citing Manual on International Law Applicable to Armed Conflicts at Sea §§ 95–97 (1995)) ("A blockade must be effective, that is, it must be enforced."). As such, Israel is not impugning Plaintiffs' backgrounds or potential affiliations in explaining the reason Israel implemented the blockade. Opp. 3. Israel enforced the blockade in this instance to ensure its effectiveness and to preserve Israel's ability to enforce the blockade under other circumstances. Israel weighed "the seriousness of the threat to Israel's national security from smuggling of weapons into Gaza," "the viability of alternatives to implementing and enforcing the blockade," and myriad national security and policy considerations for which there are no judicially discoverable standards. *See* MTD 31–32.

This Court cannot resolve Plaintiffs' claims without adjudicating "the legality of the Gaza blockade." Opp. 28. That is because, "[o]nce a blockade has been lawfully established . . . the blockading power can attack any vessel breaching the blockade if after prior warning the vessel intentionally and clearly refuses to stop or intentionally and clearly resists visit, search or capture." U.N. Rpt. 158. Simply put, "[t]here is no right within those rules to breach a lawful blockade as a right of protest," *id.*, as Plaintiffs concede they sought to do, Compl. ¶ 24 ("aims of the Flotilla" included "draw[ing] international public attention" and "break[ing] the blockade").

"In military matters in particular, the courts lack the competence to assess the strategic decision to deploy force or to recreate standards to determine whether the use of force was justified or well-founded." *El-Shifa*, 607 F.3d at 844; *accord* MTD 32 (citing examples). "Unlike the executive, the judiciary has no covert agents, no intelligence sources, and no policy advisors. The courts are therefore ill-suited to displace the political branches in such decision-making."

*Schneider*, 412 F.3d at 196. In dismissing similar claims as non-justiciable political questions, the Fourth Circuit stated: "[a]s judges, we are just not equipped to second-guess [ ] small-bore tactical decisions. We are also ill-suited to evaluate more strategic considerations. We do not know the waters . . . . What we do know is that we are not naval commanders. These are questions not intended to be answered through the vehicle of a tort suit." *Wu Tien Li-Shou*, 777 F.3d at 181; *accord Tarros S.p.A. v. United States*, 982 F. Supp. 2d 325, 333–34 (S.D.N.Y. 2013) (enforcement of embargo "by blockading and diverting" a vessel was "a delicately-calibrated [decision] based on military judgment, experience, and intelligence gathering"). So too here.

Moreover, the Court could not evaluate Israel's justification for intercepting the Flotilla and implementing the blockade without intelligence on the threats presented to Israel, the capabilities of the IDF, the options considered and rejected, and numerous other considerations that factor into military and national security policy. MTD 31–32. Plaintiffs no doubt would demand production of sensitive information that would jeopardize Israel's national security.

### C.      Adjudication Risks Conflict with Coordinate Branches of Government

Plaintiffs do not dispute the fact that the U.S. Executive Branch and the U.S. Senate "have taken certain positions on the legality of the blockade in Gaza, or Israel's right to defend its borders." Opp. 31; MTD 33–35. Nor do they dispute that, if this Court resolved such issues, it would risk a conflict with coordinate branches of the government. Instead, Plaintiffs argue only that those issues are not before the Court. But in fact, for the reasons above, a holding on the legality of the blockade is a *sine qua non* of the Court's adjudication of Plaintiffs' claims. The *Barak* decision explains why Plaintiffs' claims intrude upon the purview of the political branches. "[B]oth Turkey and Israel are allies of the United States, and the Executive Branch has studiously avoided taking any official position on the legality or wisdom of the operation. If this Court passed judgment on the legality of the operation, it would likely affect our diplomatic

relationship with Turkey, Israel, and the myriad other nations with strong feelings about who was right and who was wrong." *Barak*, 2016 WL 6024416, at *9. Plaintiffs' claims therefore are also nonjusticiable under the fourth and sixth *Baker* factors.

## III.   THE ACT OF STATE DOCTRINE BARS THIS SUIT

Plaintiffs ask this Court to pass judgment on a series of sovereign decisions made by the Israeli government that have spurred internal investigations, multiple international fact-finding missions, and thousands of pages of conflicting reports and analyses. The act of state doctrine precludes an inquiry by U.S. courts.

As Judge Bates explained, "the act of state doctrine is based on prudential separation of powers concerns as well as notions of sovereign respect and intergovernmental comity. It reflects the judiciary's reluctance to complicate foreign affairs by validating or invalidating the actions of foreign sovereigns." *Doe*, 400 F. Supp. 2d at 113 (citations omitted). To hold in Plaintiffs' favor, this Court would have to make its own determination of the facts and ultimately declare illegal sensitive military decisions taken by Israel in defense of its own territory. It is hard to imagine how that would not "imperil the amicable relations between governments and vex the peace of nations." *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 304 (1918).

That most cases applying the act of state doctrine have focused on acts within the sovereign's own borders, Opp. 34, is no impediment to applying the doctrine here. Act of state issues arise "when a court *must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign." *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp.*, 493 U.S. 400, 406 (1990). To be sure, the foreign-relations implications of a court passing judgment on acts occurring within another sovereign's own borders may counsel particularly strongly against considering such claims. But the same foreign-relations concerns also arise when parties seek adjudication of governmental acts occurring outside the sovereign's territory.

"The implications for American foreign relations flowing from judicial consideration of actions of foreign states purporting to affect American property are . . . different only in degree from the implications of judicial consideration of foreign acts done within the foreign territory." *Maltina Corp. v. Cawy Bottling Co.*, 462 F.2d 1021, 1029 (5th Cir. 1972). Thus, numerous courts of appeals, including the D.C. Circuit, have recognized that the territorial dimension in the act of state doctrine "is not so inflexible as to overlook the quintessentially sovereign nature of foreign governmental action" wherever it occurs. *Hourani v. Mirtchev*, 796 F.3d 1, 13 (D.C. Cir. 2015); *see also In re Philippine Nat'l Bank*, 397 F.3d 768, 773 (9th Cir. 2005).

In any event, Plaintiffs assert claims arising from alleged acts within Israeli territory. Some of Plaintiffs' allegations pertain to supposed acts committed in Ashdod after the *Challenger I*'s arrival there. Compl. ¶¶ 46, 64. Even under Plaintiffs' cramped view of the act of state doctrine, claims arising from those alleged acts are covered. And all of Plaintiffs' claims— which they have brought not against individual IDF officers, but against Israel and several of its ministries—involve official military decisions made within Israeli territory.

The D.C. Circuit held in analogous circumstances that acts outside foreign sovereign territory could nonetheless satisfy any territoriality requirement (if one exists) for act of state purposes. *Hourani*, 796 F.3d at 13–14. There, the Ambassador of Kazakhstan allegedly published defamatory remarks in the United States. Nevertheless, the court found that "the alleged conduct here is rooted, in all relevant respects, within sovereign territory" because the statements were government speech "formulated and directed from Astana, Kazakhstan." *Id.* at 13. The same analysis applies here. The governmental decisions Plaintiffs challenge were "formulated and directed from" within Israel and thus firmly anchored in Israeli territory. *Id.*

In arguing that the act of state doctrine should not apply because "treaty standards govern this case," Opp. 35, Plaintiffs misinterpret the Supreme Court's decision in *Banco National de Cuba v. Sabbatino*, 376 U.S. 398 (1964). In *Sabbatino*, the Court articulated the reasons why it should *not* second-guess a foreign state's sovereign acts. But the case does not say when the Court *should* do so. Indeed, the Court in *Sabbatino* expressly refused to "lay[ ] down . . . an inflexible and all-encompassing rule." 376 U.S. at 428. Rather, it reached the narrow conclusion that it "will not examine the validity of a taking of property within its own territory by a foreign sovereign government . . . in the absence of a treaty or other unambiguous agreement regarding controlling legal principles, even if the complaint alleges that the taking violates customary international law." *Id.*[7]

Plaintiffs fail to establish that Congress has overridden the act of state doctrine in these circumstances. The Second Hickenlooper Amendment, which precludes application of the doctrine only for certain expropriation claims, does not apply. And contrary to Plaintiffs' suggestion, the court in *Daliberti v. Republic of Iraq*, 97 F. Supp. 2d 38 (D.D.C. 2000), did not derive some implicit legislative command to foreclose the act of state doctrine. Rather, the court concluded that dismissing the action "would constitute more of a judicial interference in the announced foreign policy of the [domestic] political branches of government than to allow the suit to proceed under the explicit authorization of Congress [through the specific designation of Iraq as a terrorist state]." *Id.* at 55.

---

[7] In any event, Plaintiffs have characterized and pleaded their suit as "an action in tort." Opp. 1. Thus, unlike the cases on which Plaintiffs rely, this is not a case where "an applicable . . . treaty governs the legal merits of the controversy." *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1540 (D.C. Cir. 1984) (bilateral treaties between Honduras and the United States governed claims provided standards for adjudicating claims for expropriation like the plaintiff's), *judgment vacated on other grounds*, 471 U.S. 1113 (1985); *Kalamazoo Spice Extraction Co. v. Provisional Military Gov't of Socialist Eth.*, 729 F.2d 422, 425 (6th Cir. 1984) (similar).

To hold in Plaintiffs' favor, this Court would have to find that sensitive decisions of national security, formulated by Israel and its ministries from within Israeli territory, were invalid. The act of state doctrine precludes the Court from venturing into such perilous waters.

## IV.   THE COMPLAINT FAILS TO STATE A CLAIM

The Court also should dismiss the Complaint for failure to state a claim.

### A.   Plaintiffs' Allegations Fail on Their Merits

Plaintiffs concede that the law "require[s] that they 'identify a particular cause of action arising out of a specific source of law.'" Opp. 38–39; MTD 37–39. Plaintiffs also concede that the particular federal statutes and treaties invoked in the Complaint (the FSIA, the War Crimes Act, the International Covenant on Civil and Political Rights, the Convention Against Torture, and the Fourth Geneva Convention) do not provide a private cause of action. *Id.* Plaintiffs argue that they still satisfied their obligation by alleging "causes of action sounding in tort: . . . the common law, by which, since time immemorial, persons aggrieved are permitted to sue those who trespassed against them," Opp. 38, based on "applicable law," *e.g.*, Compl. ¶ 51. Even now, Plaintiffs do not identify a particular cause of action arising out of a specific source of law.

Plaintiffs do not dispute the legal insufficiency of Counts 2 to 9. MTD 39–42; Opp. 39–41. Still, Plaintiffs contend that Israel's argument for dismissal of the torture claim in Count 1 is "premature," and that *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82 (D.C. Cir. 2002), supports sending that claim to trial. Opp. 39–40. Plaintiffs get *Price* wrong.

Plaintiffs write that "the Court of Appeals [in *Price*] did *not* affirm the dismissal below, but ordered that the plaintiffs be permitted 'to attempt to amend their complaint.'" Opp. 40 (emphasis in original). In fact, the district court had *denied* Libya's motion to dismiss plaintiffs' torture claim based on sovereign immunity, and the court of appeals *reversed*. The plaintiffs had alleged that Libya held them in "a cramped cell" in "deplorable conditions," "kicked, clubbed

and beat[ ]" the plaintiffs, and "subjected [them] to physical, mental and verbal abuse." 294 F.3d
at 86. The court of appeals found these allegations "*insufficient to survive defendant's motion to
dismiss*," because "the facts pleaded do not reasonably support a finding that the physical abuse
. . . evinced the degree of cruelty necessary to reach a level of torture." *Id.* at 94 (emphasis
added). The court underscored: "Plaintiffs must allege more than that they were abused. They
must demonstrate in their pleadings that Libya's conduct rose to such a level of depravity and
caused them such intense pain and suffering as to be properly classified as torture." *Id.* Having
found that the complaint did not state a claim, the court of appeals remanded to allow the
plaintiffs to amend their complaint to try to meet this pleading standard.

Plaintiffs' allegations that Ms. Deknopper suffered a broken nose when an IDF bullet
struck her and Ms. Arraf was injured when IDF soldiers pushed her to the deck, Compl. ¶ 48, fall
well short of the D.C. Circuit's definition of torture in *Price*.

B.      **Plaintiffs' Claims Are Untimely**

Plaintiffs do not dispute the relevant statutes of limitations, nor do they dispute that their
claims in Counts 5–9 are all untimely absent equitable tolling. Plaintiffs' allegations regarding
equitable tolling are also inadequate.

Plaintiffs acknowledge that they bear the burden on tolling. Opp. 41. To carry that
burden, a plaintiff "must show (1) that he has been pursuing his rights diligently, and (2) that
some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence v.
Florida*, 549 U.S. 327, 336 (2007); *see also* Opp. 41. Courts allow equitable tolling "only in
extraordinary and carefully circumscribed circumstances." *Norman v. United States*, 467 F.3d
773, 776 (D.C. Cir. 2006). Plaintiffs' own authorities provide that "[s]tatutes of limitations serve
important purposes in our legal system and should be strictly enforced in all but the most
egregious of circumstances." *Arce v. Garcia*, 434 F.3d 1254, 1265 (11th Cir. 2006).

Plaintiffs argue that they met that high threshold because they "attempted to secure remedies, *inter alia*, in the courts of Israel, and have been consistently stymied," and were engaged in the "futile pursuit of justice." Opp. 41–42. The Complaint is even more vague in alleging that Plaintiffs "attempted to obtain relief in multiple fora," but Defendants did not "participate meaningfully." Compl. ¶ 89. Those bare assertions do not satisfy Plaintiffs' burden, as they allege *no* facts about their remedial efforts. Plaintiffs have asserted a conclusion with no specific allegations to support it—no allegations about when they sought relief in Israeli courts, what relief they requested, what Defendants did in relation to their suit, or when Plaintiffs decided that pursuing that relief was supposedly futile. Plaintiffs have alleged nothing from which this Court could conclude that they diligently pursued their rights in Israel. At this time, Israel is not aware of any claims for injuries that Plaintiffs filed in Israeli courts, much less that Plaintiffs *exhausted* available remedies. The D.C. Circuit rejected a similar argument that a plaintiff exercised due diligence before filing a federal suit because (1) he did not substantiate those claims to the district court, and (2) their pendency did not demonstrate that he acted with due diligence before the statute of limitations expired. *Norman*, 467 F.3d at 776. The conclusory assertion in Plaintiffs' Opposition falls far short of demonstrating that extraordinary circumstances prevented their timely filing here. Thus, Counts 5–9 are time-barred.

## V.      ISRAEL IS THE MORE SUITABLE FORUM TO RESOLVE THIS DISPUTE

Plaintiffs concede that numerous decisions "understandably" find Israeli courts to be an adequate, available forum in granting dismissal under the *forum non conveniens* doctrine, at least in commercial cases. Opp.43–44; MTD 43–45. Nor do Plaintiffs dispute that "allegations concerning the Israeli military and Israeli foreign policy counsel in favor of a *forum non conveniens* dismissal," MTD 44 (quoting *Wilson v. Eckhaus*, 349 F. App'x 649, 652 (2d Cir. 2009)), especially when, as here, the Israeli government explains the case's impact on national

security interests. Israel is a democracy, with an independent judiciary. Plaintiffs offer no reason why U.S. courts are better suited than Israeli courts to adjudicate claims implicating the proper conduct of Israeli forces.[8] Under these circumstances, *forum non conveniens* dictates dismissal.

## CONCLUSION

Although Plaintiffs characterize this action as an unexceptional tort case, Plaintiffs' claims would in fact require this Court to determine whether Israel's naval blockade of the Gaza Strip and a military operation to implement that blockade were justified. To do so, the Court would have to second-guess national security decisions of a foreign sovereign, wreaking diplomatic, political, and legal havoc, domestically and internationally, and setting a dangerous precedent encouraging other plaintiffs to thrust the U.S. courts into the political realm. Because Israel is immune from suit and Plaintiffs' claims are nonjusticiable in a U.S. court, Israel respectfully requests that this Court dismiss the Complaint with prejudice.

October 17, 2016

Respectfully submitted,

/s/ John B. Bellinger, III

R. Reeves Anderson (DC Bar 994989)
ARNOLD & PORTER LLP
370 Seventeenth Street
Suite 4400
Denver, CO 80202
Tel: (303) 863-1000
reeves.anderson@aporter.com

John B. Bellinger, III (DC Bar 405059)
Robert N. Weiner (DC Bar 298133)
Robert A. DeRise (DC Bar 1005355)
ARNOLD & PORTER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Tel: (202) 942-5000
john.bellinger@aporter.com

---

[8] Indeed, after Israel filed its motion to dismiss, Israel's Supreme Court issued a decision addressing Israeli procedure for claimants like Plaintiffs to pursue property rights claims when their vessels have been seized. CA 7307/14 *The State of Israel v. The Ship Estelle* (2016) (Isr.).

25

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of October, 2016, I have caused to be served, by this

Court's ECF system, a true and correct copy of this document on all counsel of record.


/s/ John B. Bellinger, III
John B. Bellinger, III
(DC Bar 405059)