# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DAVID SCHERMERHORN, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 1:16-cv-49 (ABJ) |
| ) | |
| THE STATE OF ISRAEL, *et al.*, ) | |
| ) | |
| Defendants. ) | |

PLAINTIFFS' SUR-REPLY
IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Pending before the Court in this case is Defendants' Motion to Dismiss (Doc. No. 17-1), which Defendants opposed on September 19, 2016 (Doc. No. 17). Defendants filed a Reply to Plaintiffs' Opposition on October 17, 2016 ("D. Rep.," Doc. No. 23), which was the final submission contemplated by the Court's Scheduling Order (Minute Entry dated August 11, 2016).

In their Reply, however, Defendants discuss two events that occurred after Plaintiffs' Opposition was filed: the enactment, over President Obama's veto, of the Justice Against Sponsors of Terrorism Act ("JASTA," Pub. L. 114–222) on September 28, 2016, and the dismissal by the U.S. District Court for the Central District of California of the case of *Dogan v. Barak*, No. 2:15-cv-08130-ODW(GSJx), on October 13, 2016. Plaintiffs have therefore submitted a Motion for Leave to file this Sur-Reply, limited to those two matters, which is attached to this Motion as Exhibit A. Defendants have indicated that they consent to this relief, on the conditions that (a) the Sur-Reply is limited to the two issues cited above, and (b) Plaintiffs

2

will not object to Defendants' request to respond to this filing, should they so choose. Counsel for the two sides have agreed to those terms, subject to the approval of the Court.

### I.     JASTA Is Fully Consistent with Plaintiffs' Reading of the FSIA.

In their Reply, Defendants contend that

> if Plaintiffs' reading of [28 U.S.C.] § 1605A were correct, the recently enacted Justice Against Sponsors of Terrorism Act, which creates a new exception to sovereign immunity purportedly to allow Saudi Arabia to be sued for the 9/11 attacks, would have been unnecessary because Saudi Arabia – which is not a designated state sponsor of terrorism – would already have been subject to suit under § 1605A.

D. Rep., p. 7, n.4. But without entering into the political fray that led to the enactment of JASTA over the first veto of President Obama's tenure in office, it seems clear that JASTA permits suits that would otherwise not be permitted under the FSIA, on either Plaintiffs' or Defendants' interpretations of 28 U.S.C. §1605A.

Before the enactment of JASTA, §1605A denied the sovereign immunity defense to states in suits alleging that "personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency."  JASTA provides a new exception to immunity for acts of terrorism committed in the United States, designated §1605B, and applies that exception to civil actions claiming "a tortious act or acts of the foreign state, or of any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, regardless where the tortious act or acts of the foreign state occurred."  This gave expression to the sense of Congress that

3

> Persons, entities, or countries that knowingly or recklessly contribute material support or resources, directly or indirectly, to persons or organizations that pose a significant risk of committing acts of terrorism that threaten the security of nationals of the United States or the national security, foreign policy, or economy of the United States, necessarily direct their conduct at the United States, and should reasonably anticipate being brought to court in the United States to answer for such activities.

JASTA, Pub. L. 114-222, § 2(a)(6). Defendants are quite correct in pointing out that the new §1605B does not require that a defendant state be designated a "state sponsor of terrorism" in order to be denied immunity. As the Court is aware, for the reasons set out at pp. 22-25 of their Brief in Opposition to the Motion to Dismiss, Plaintiffs argue that the 2008 amendment to the FSIA had already removed the requirement of the statute's earlier iteration that states be designated as sponsors of terrorism as a prerequisite allowing suits against them to be heard.

On Plaintiffs' reading, the new law expands not the set of states to be denied immunity, but the nature of the acts that may be the basis of civil actions. The intention of the statute, by all accounts, was to permit the families of victims of the terrorist attacks of September 11, 2001, to file suits against the Kingdom of Saudi Arabia, which is accused not of direct or command responsibility for the attacks themselves, but of providing financing and other forms of indirect support.[1] That is what Congress identified as the purpose of the Act: allowing the Courts to grant "relief against persons, entities, and foreign countries, wherever acting and wherever they may be found, that have provided material support, directly or indirectly, to foreign organizations or persons that engage in terrorist activities against the United States." JASTA, § 2(b).

---

[1] The alleged conduct of the Saudi Government that may now be challenged under JASTA involved tortious acts occurring **outside** the United States, which caused injuries and death **in** this country. Before the new Act was adopted, § 1605A did not address such allegations. Nor could claims have been brought against Saudi Arabia under § 1605(a)(5), which lifts sovereign immunity only for tortious acts committed in the U.S. The JASTA formulation – obviously tailored to cover the 2001 terrorist attacks – has nothing to do with the case at Bar.

4

That Saudi Arabia is not on the list of designated state sponsors of terrorism, in other words, is not the impediment to suit that JASTA was intended to overcome.  Rather, JASTA permits suits to go forward based on the allegation that a sovereign defendant "knowingly or recklessly contribute[d] material support or resources, directly or indirectly, to persons or organizations … committing acts of terrorism" against the United States.  *Id*., § 2(a)(6).  That the provision of material support to terrorist "persons or organizations" (such as Al Qaeda) may be "knowing" or "reckless," and that the support tying the state defendant to such "persons or organizations" may be "direct" or "indirect," expands the scope of the 2008 enactment of § 1605A.  It is that expansion, not the omission of a requirement that a defendant state be designated a sponsor of terrorism, that was the intent behind JASTA, and that will permit suits against Saudi Arabia to go forward within the other restrictions of the Act.

Congress made clear that this was the intention behind JASTA by providing, at §§ 2(4) and 2(5),that the Act "recognize[s] the substantive causes of action for aiding and abetting and conspiracy liability," already criminalized by 18 U.S.C. §§ 2331-2339D.

Plaintiffs in the case at Bar, of course, do not contend that Israel and its agencies "knowingly or recklessly contribute[d] material support or resources, directly or indirectly, to persons or organizations … committing acts of terrorism" in the United States.  They do not charge that Defendants are liable as aiders and abettors to an act of international terrorism as envisaged in JASTA.  Rather, they allege that Defendants were responsible for acts among those that Congress in 2008 found to be sufficient grounds for denying sovereign immunity to defendants in U.S. lawsuits.

Plaintiffs' reading of the "terrorism exception" under the FSIA is therefore entirely consistent with the enactment of JASTA.

## II. The Dismissal of the *Dogan* Case in Los Angeles Has No Bearing on This Case.

In their Reply Memorandum, Defendants make much of the fact that a case arising from the same episode – the attack by Israeli Defense Forces on the ships making up the Gaza Freedom Flotilla – was dismissed by a District Judge in Los Angeles. *Dogan v. Barak*, No. 2:15-cv-08130-ODW(GSJx). *See* D. Rep., pp. 1, 2, 3, 5, 14, 15, 19. In fact, Judge Wright's decision was expressly based on the doctrine of "foreign official immunity" of Ehud Barak, Israel's erstwhile Defense Minister and Prime Minister. *Dogan v. Barak*, slip op. at p. 1. That doctrine has no relevance in the case before this Court, in which no Defendant is a foreign official.[2]

The California Judge made clear that foreign official immunity was the exclusive basis on which his opinion was grounded, and expressly disavowed ruling on the other defenses asserted by former Minister Barak. "The Court concludes that the foreign official immunity doctrine requires the dismissal of this action, and thus declines to address Barak's remaining arguments." *Id.*, slip op. at p. 7. Those "remaining arguments" that the Court indicated that it would not address included the political question and act of state doctrines, and the alleged failure to state a claim under Rule 12(b)(6). Nevertheless, Judge Wright expressed his views on those matters, which Plaintiffs submit were simply *obiter dicta*.

Defendants call the attention of this Court to those views, notwithstanding the Judge's own admonition that they were not the basis of his decision. It is at least misleading, therefore, to describe the *Dogan* case and the one at Bar as presenting "similar challenges." *See*, *e.g.*, D. Rep., pp., 1, 2. So, for example, Defendants tell this Court that in *Dogan*, "the court recognized the inseparable political and diplomatic underpinnings of Plaintiffs' claims: 'the diplomatic

---

[2] Undersigned counsel are informed that the *Dogan* plaintiffs intend to appeal the dismissal.

firestorm following this incident, and the precarious state of U.S.-Middle East relations, shows why this dispute should be resolved through diplomacy rather than in the courts.'" D. Rep., at p. 14, citing *Dogan*, slip op. at p. 18.  But *Dogan* was not decided on these grounds, and by Judge Wright's very express indication, his opinion concerning why the case "should be resolved through diplomacy" is *obiter dictum* entitled to no particular deference.

The same is true of the belief the *Dogan* Court expressed to the effect that "the prolonged diplomatic standoff between Turkey and Israel, as well as the manner in which the standoff was resolved, vivifies how these incidents are inextricably intertwined with politics, diplomacy, foreign policy . . . and thus why their resolution is best left to the political branches of government." D. Rep., at p. 15.  Judge Wright is of course entitled to his opinions on such matters, but *dicta* are not precedent.  Indeed, they are, in Justice Scalia's words, "outside the bounds of Article III jurisdiction." *Camreta v. Greene*, 563 U.S. 692, 723 (2011) (Scalia, J., concurring).[3]

The decision in the *Dogan* case, therefore, offers nothing of precedential substance regarding the political question doctrine, the act of state doctrine, or considerations under Rule 12(b)(6), all of which are at issue in the pending Motion to Dismiss.

---

[3] The language taken from Judge Wright's decision also contains reference to the manner in which what he described as the "diplomatic standoff between Turkey and Israel" concerning The Mavi Marmara incident was "resolved."  Although this issue is not before the Court, it should be noted that the "resolution" to which the Court apparently was referring was a reported settlement agreement between the Governments of Turkey and Israel providing, *inter alia*, for the reestablishment of diplomatic relations between the two countries, and the resolution of litigation before Turkish courts.  That document, of course, has no bearing on this case or on Plaintiffs, none of whom is of Turkish nationality.

                                        Respectfully submitted,

                                        /s/ *Steven M. Schneebaum*
                                        _____

                                        Steven M. Schneebaum
                                              (D.C. Bar No. 956250)
                                        STEVEN M. SCHNEEBAUM, P.C.
                                        1776 K Street, N.W.; Suite #800
                                        Washington, D.C. 20006
                                        Tel: (202) 742-5900
                                        Fax: (202) 449-3835
                                            E-mail:
                                        Counsel of Record for Plaintiffs

Of counsel:    Ralph G. Steinhardt
                     GEORGE WASHINGTON UNIVERSITY LAW SCHOOL
                     2000 H Street, N.W.
                     Washington, D.C. 20052

Dated:   November 1, 2016