UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DAVID SCHERMERHORN**, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 1:16-cv-49 (ABJ) |
| ) | |
| **THE STATE OF ISRAEL**, *et al.*, ) | |
| ) | |
| Defendants. ) | |

PLAINTIFFS' RESPONSE
TO THE STATEMENT OF INTEREST OF THE UNITED STATES

Pending before the Court in this case is Defendants' Motion to Dismiss (Doc. No. 17-1). Plaintiffs have filed a Memorandum in Opposition to the Motion (Doc. No. 22), Defendants replied (Doc. No. 23), and, with the Court's leave, Plaintiffs submitted a sur-reply, addressing developments that had occurred subsequent to the filing of their Opposition (Doc. No. 26).

On September 14, 2016, this Court *sua sponte* invited the Department of State "to state its views, if any, on the issues raised in the motion to dismiss" (Doc. No. 21). Presumably pursuant to that invitation, the Department of Justice submitted a brief on November 21, 2016 ("DOJ-SOI," Doc. No. 28). In accordance with the Court's Minute Order of November 28, 2016, Plaintiffs now respectfully respond to the Statement of Interest of the United States.

Plaintiffs respectfully submit that the Statement of Interest adds nothing of substance to the analysis of the issues that this Court must now decide, and it is entitled to no particular deference. The DOJ-SOI merely reiterates arguments already presented by Defendants with respect to the scope of the two statutory exceptions to sovereign immunity, 28 U.S.C. §§ 1605(a)(5) and 1605A, that Plaintiffs assert are applicable in this case.

1

What is most notable about the Government's submission is what it does **not** contain: it was **not** signed on behalf, nor does it claim to express the views, of the Department of State (which was what the Court expressly invited). It does **not** contend that adjudication of this case would trench on powers or functions constitutionally reserved to the Executive. It does **not** say anything like "here are the foreign-policy reasons why the Executive Branch is worried about continued adjudication of this specific case." *Beaty v. Republic of Iraq*, 480 F. Supp. 2d 60, 79 (D.D.C. 2007), *rev'd on other grounds*, 556 U.S. 848 (2009). The D.C. Circuit has "signaled its view that there is in fact a difference between the 'level of deference' owed an Executive Branch filing 'that unambigously requests' dismissal under the political-question doctrine, and a filing that merely alerts a court to the possibility that a pending suit, depending on its scope and outcome, could affect American foreign-policy interests somewhere down the road." 480 F. Supp. 2d 60, 82, citing *Doe v. Exxon Mobil Corp.*, 473 F.3d 345, 354 (D.C. Cir. 2007).[1]

The views of the Department of Justice on pure questions of law are not to be accorded any special stature or credibility in courts exclusively tasked, under our system of separation of powers, with the duty "to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch.) 137, 177 (1803). Indeed, as the United States Supreme Court has taught, when issues presented for adjudication concern, as they do here, "interpretation of the FSIA's reach – a 'pure question of statutory construction ... well within the province of the Judiciary,' *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446, 448 (1987) – … the United States' views on such an issue are of considerable

---

[1] The **only** reference in the Statement of Interest to the potential foreign policy consequences of a finding of subject matter jurisdiction over this case – presumably, the reason the Court asked for the State Department's position – is this single sentence, from the Government's discussion of the tort exception in the FSIA: "Evading the statute's careful geographic limitations in this manner could lead to foreign relations problems or reciprocal exposure for the United States in foreign courts." DOJ-SOI, p. 10, n.5. This *ipse dixit* hardly rises to the level of analysis that merits judicial deference, according to such cases as *Beaty* and *Doe*.

interest to the Court, [but] they merit no special deference." *Republic of Austria v. Altmann*, 541 U.S. 677, 701 (2004). And it would seem to follow *a fortiori* that the views of the Executive branch do not merit any particular regard when they purport to inform the Court of the legislative intent behind statutory enactments.[2]

The caselaw makes clear that the reach of a federal jurisdictional statute is an issue falling within no special expertise of the Department of Justice. To the contrary, "[i]nterpreting statutes granting jurisdiction to Article III courts is exclusively the province of the courts." *Ramey v. Bowsher*, 9 F.3d 133, 136 n.7 (D.C. Cir. 1993). Accord *Lindstrom v. United States*, 510 F.3d 1191, 1195 n.3 (10th Cir. 2007) ("Determining federal court jurisdiction is exclusively the province of the courts regardless of what an agency may say" (internal quotations omitted)); *Shweika v. Dep't of Homeland Sec.*, 723 F.3d 710, 718 (6th Cir. 2013).

Nor is the FSIA a statute involving "a Congressional delegation of administrative authority" to an expert agency whose interpretations might then be entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Adams Fruit Co., Inc. v. Barrett*, 494 U.S. 638, 649 (1990). "*Chevron* does not apply to statutes that … confer jurisdiction on the federal courts." *Murphy Expl. & Prod. Co. v. U.S. Dep't of the Interior*, 252 F.3d 473, 478 (D.C. Cir.), *opinion modified on denial of reh'g*, 270 F.3d 957 (D.C. Cir. 2001), *cited with approval in NetCoalition v. SEC*, 715 F.3d 342, 348 (D.C. Cir. 2013). The FSIA could not be clearer in conferring the power to determine the statute's reach exclusively

---

[2] The DOJ-SOI is especially liberal in offering speculation about what Congress did or did not mean in adopting various provisions of the FOIA. *See*, for example, DOJ-SOI, pp. 5, 7-10, 12-13. This speculation is so adventurous as to suggest that the testimony of a Justice Department official at a Committee hearing in 1973 "confirms" what a later Congress "intended" in enacting the law in 1976. DOJ-SOI, p. 8, n.3. This comes perilously close to the argument from congressional silence that Justice Scalia suggested, in *United States v. Estate of Romani*, deserved to be "laughed out of court." 523 U.S. 517, 535 (1998) (Scalia, J., concurring).

upon the judiciary. 28 U.S.C. § 1602 ("Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter.").

The merits of the arguments raised by the Department of Justice require little discussion here, since nearly all of them were made by Defendants in their Motion and hence were addressed by Plaintiffs in their Opposition. But Plaintiffs submit the following with regard to the few points made by the United States that are new:

1.      The Department of Justice attributes to Plaintiffs the argument that U.S.-flagged ships on the high seas are "within the United States," for the purposes of 28 U.S.C. § 1605(a)(5), **because** they are subject to the jurisdiction of the United States for certain specific purposes. *See* DOJ-SOI, p. 4. But Plaintiffs make no such submission. They are aware that the statute in question requires that, to justify denial of immunity to a sovereign tortfeasor, the act must have occurred "in the United States." Whether the deck of a U.S. vessel in international waters is "in the United States" is a question of first impression: it was certainly not resolved in *Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F.3d 239, 246 (2d Cir. 1996), in which the Court "assume[d] without deciding" similarities between ships and aircraft.

The FSIA's definition of the "United States" is not exclusive: it says what the term "United States" **includes**, not what it **means**.[3] The term "includes all territory and waters, continental or insular, subject to the jurisdiction of the United States." 28 U.S.C. § 1603(c). This specifies certain places that are covered, while leaving open what other locations might also be in the "United States." Congress simply did not address places other than those listed. And

---

[3] The definitions in § 1603(b), (d), and (e), by contrast, are exhaustive, setting out precisely what the defined terms "mean," not simply what they "include."

there is certainly no indication that torts occurring on U.S.-flagged ships were intentionally **excluded** from the congressional mandate.

Moreover, the Supreme Court indicated in such cases as *Scharrenberg v. Dollar S. S. Co.*, 245 U.S. 122 (1917), on which the Department of Justice relies (DOJ-SOI, pp. 6-7), that the notion of a ship as a "floating island" of the territory whose flag it flies is not a mere "metaphor" simply to be discarded in the course of judicial deliberation, but rather a useful figure whose applicability must be determined on a case-by-case basis. The *Scharrenberg* Court found that considering merchant seamen to be working "in the United States" would be inconsistent with the letter and spirit of a statute governing foreign contract laborers.[4]

Plaintiffs invite just such an analysis here. The evident purpose behind the §1605(a)(5) exception was to hold sovereign tortfeasors accountable when their acts or omissions cause harm in the United States, and when immunity would result in unfair and unjustifiable disregard for the rights of their victims. It was to assimilate sovereigns to private parties otherwise similarly situated, taking away an artificial advantage not required by international law and fundamentally at variance with the principles of equality in which our legal system is grounded. *See* 28 U.S.C. § 1606 ("As to any claim for relief with respect to which a foreign state is not entitled to immunity …, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances…").

The Department of Justice accuses Plaintiffs of adopting artificial and indefensible distinctions based on the location of a ship (*see* DOJ-SOI, pp. 8-9), but the SOI is itself subject to

---

[4] The Court concluded that the seamen were not "contract laborers" at all, and so the cited statute did not apply to them. 245 U.S. 122, 128. Strictly speaking, this conclusion rendered the Court's discussion of whether seamen on board U.S. vessels are working "in the United States" an *obiter dictum*.

the same criticism.  It is impossible to understand why a sovereign whose agents tortiously harm Americans on a U.S.-flagged vessel 11.9 nautical miles from our shores should be subject to suit, while the same act against the same vessel, and injuring the same victims, should be unreviewable if it happens a few hundred yards further out to sea.

*Scharrenberg* and the other cases supposedly debunking the "floating island" metaphor are entirely consistent with the position Plaintiffs take here.  For some purposes, a ship is treated as part of the territory of the country whose flag it flies.  For others, it is not. The question that Plaintiffs pose is this: which interpretation of the tort exception in the Foreign Sovereign Immunities Act better approximates the goals that Congress sought to achieve in enacting that statute?  Neither the statutory text nor the legislative history provides controlling guidance.  To answer that question, the Court must concern itself with the objects and purposes of the law. *United States v. Villanueva-Sotelo*, 515 F.3d 1234, 1237 (D.C. Cir. 2008) ("if we find the statutory language ambiguous, we look beyond the text for other indicia of congressional intent").  And in Plaintiffs' submission, such an approach will conclude that the allegations of the Complaint do satisfy the jurisdictional prerequisites of 28 U.S.C. § 1605(a)(5).

     2.     The Department of Justice contends that there is some kind of logical inconsistency or linguistic legerdemain in Plaintiffs' submission that, when it enters the territorial waters of another nation, a U.S.-flagged vessel is no longer "in the United States." DOJ-SOI, pp. 8-9.  But that proposition reflects neither illogic nor sleight-of-hand.  Indeed, it is entirely consistent with the decision of the Permanent Court of International Justice in *The S.S. Lotus [Fr. v. Turk.]*, [1927 P.C.I.J.], ser. A, No. 10 (Sept. 7), which has been cited with approval in such cases as *United States v. Marino-Garcia*, 679 F.2d 1373, 1380 (11th Cir. 1982).

Plaintiffs do not argue for an "interpretive contortion" that would "giv[e] the same word, in the same statutory provision, different meanings in different factual contexts." *United States v. Santos*, 553 U.S. 507, 522 (2008); *see* DOJ-SOI, pp. 8-9. Rather, they contend that international law permits, and that the U.S. Congress has recognized, states' assertion of plenary jurisdiction over their flagged vessels on the high seas. But when a ship sails into the territorial waters of another country, jurisdiction over it is shared between the country of the vessel's nationality and the one whose waters it has entered. This is a proposition of law, not an assignment of "different meanings [to the same word] in different factual contexts."

But in any event, it is not necessary for the Court to decide the question of whether the tort exception applies to U.S.-flagged vessels in another country's waters. The assault on *The Challenger I* took place on the high seas, and not within the jurisdiction of any other state.[5]

3.  The Department of Justice appears to be very exercised about Plaintiffs' discussion of the applicable jurisdictional standard in FSIA-exception cases at the motion to dismiss stage. It represents to the Court that "it is not sufficient for Plaintiffs to make non-frivolous arguments that their claims satisfy the requirements of the tort or terrorism exceptions. Rather, the Court must resolve the legal questions discussed above to determine whether this case actually satisfies the relevant jurisdictional requirements." DOJ-SOI, p. 15.

The parties seem to agree that the closest case from which guidance may be derived is *Simon v. Republic of Hungary*, 812 F.3d 127 (D.C. Cir. 2016), which concerned the

---

[5] The portion of the DOJ-SOI addressing the exception to sovereign immunity set out in 28 U.S.C. § 1605A – that is, pages 10-14 – makes the same arguments presented by Defendants in their Motion and Reply, and addressed by Plaintiffs in their Opposition (Doc. No. 22), at pp. 22-25. The Department of Justice, like Defendants, argues that the exception applies only to states designated as "sponsors of terrorism." Plaintiffs counter that this **was** a correct statement of the law before the 2008 amendments to the FSIA, but it no longer is. They respectfully refer the Court to their earlier submission on this issue rather than repeating it here.

7

expropriation exception in the FSIA (28 U.S.C. § 1605(a)(3)).  The Court of Appeals for the District of Columbia Circuit, *per* Judge Srinavasan, held that when a plaintiff alleges facts satisfying the basic elements for denial of immunity, and "the jurisdictional and merits inquiries fully overlap in that fashion, a plaintiff need not prove a winning claim on the merits merely to establish jurisdiction.  Rather, the plaintiff need only show that its claim is 'non-frivolous' at the jurisdictional stage, and then must definitively prove its claim in order to prevail at the merits stage."  812 F.3d 127, 141.  The Department of Justice, however, insists that here, "the merits of Plaintiffs' claims do not mirror the relevant jurisdictional inquiries."  DOJ-SOI, p. 14.

But of course they do.  Plaintiffs allege that they were the victims of torts committed at Defendants' direction, of a type and at a location in which the tort exception, 28 U.S.C. § 1605(a)(5), withholds the sovereign immunity defense.  At trial, they may or may not be able to prove those claims by a preponderance of the evidence.  But Defendants deny neither that *The Challenger I* was attacked at the date, time, and place alleged in the Complaint, nor that Plaintiffs were injured as they said they were.  This demonstrates the "mirroring" to which the Circuit referred in *Simon*, and establishes that under the governing jurisdictional standard, Plaintiffs must show at this early stage only that their claims are non-frivolous.

The Statement of Interest suggests – somewhat counter-intuitively, after relying on the decision – that the holding in *Simon* is limited to cases alleging expropriation in violation of international law.[6]  It then, however, grudgingly concedes that "**[s]ome courts in this District have applied the non-frivolous standard to other FSIA exceptions, notwithstanding the different

---

[6] To satisfy the requirements of § 1605(a)(3), a plaintiff must demonstrate not only that s/he was deprived of property by a foreign state, but *inter alia* that the taking was "in violation of international law."  Thus to clear the jurisdictional hurdle, it is necessary to establish not only the existence of the facts as alleged, but their correct legal characterization.  Section 1605(a)(5) does not contain such a prerequisite.

8

wording of those exceptions. *See de Csepel v. Republic of Hungary*, 169 F. Supp. 3d 143, 156-57 (D.D.C. 2016) (commercial activity exception); *Owens v. Republic of Sudan*, 2016 WL 1170919, at *22-*24 (D.D.C. Mar. 23, 2016) (terrorism exception)." DOS-SOI, p. 14, n.6 (emphasis added). This is precisely what Plaintiffs said in their Opposition to the instant Motion: "Where, as here, the claims on the merits set out in the Complaint directly mirror the jurisdictional standard, Plaintiffs 'need only show that [their] claim is "non-frivolous" at the jurisdictional stage and need not definitively prove its claim as [they] would at the merits stage.' *De Csepel*, 2016 WL 1048758, at p. *9." Plaintiffs' Opposition (Doc. No. 22), p. 7.

It is not that "some courts in this District" have so held: there is only one trial-level federal Court in this District, and *de Csepel* and *Owens* are decisions of that (*i.e.*, this) Court. It may well be that the Circuit has heretofore given no express guidance on the resolution of the jurisdictional standard question in cases alleging exceptions to immunity under § 1605(a)(5) or § 1605A, but that is because such cases have not been presented to it. There is certainly no basis to conclude, as the Department of Justice does and invites this Court to do, that in the absence of a case raising this issue the Court of Appeals has effectively resolved it.

Finally, the Department informs the Court that the United States Supreme Court "is currently considering whether the D.C. Circuit's application of the non-frivolous standard under [the] FSIA's expropriation exception is proper." DOJ-SOI, p. 15, n.7, citing *Venezuela v. Helmerich & Payne, Int'l*, No. 15-423 (U.S. Sup. Ct.). In fact, a writ of certiorari was granted in *Helmerich & Payne* on June 28, 2016, limited to this question: "Whether the pleading standard for alleging that a case falls within the FSIA's expropriation exception is more demanding than the standard for pleading jurisdiction under the federal-question statute, which allows a jurisdictional dismissal only if the federal claim is wholly insubstantial and frivolous." 136 S.Ct.

2539 (2016).  The Court of Appeals answered the question in the negative, and that is the law of this Circuit unless and until the Supreme Court says otherwise.

What the Statement of Interest does not disclose, however, is the far-reaching language deployed by Judge Tatel for the Circuit Court panel in reaching that conclusion.  *Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 784 F.3d 804 (D.C. Cir. 2015), *cert. granted*, 136 S. Ct. 2539 (2016).  The Court twice described the requirement that the jurisdictional allegations of the complaint be "neither 'wholly insubstantial' nor 'frivolous' as "this Circuit's standard for surviving a motion to dismiss in an FSIA case," 784 F.3d 804, 809, 812, citing *Agudas Chasidei Chabad of U.S. v. Russian Federation*, 528 F.3d 934, 940 (D.C. Cir. 2008).  And it held that this Court's dismissal of the claim, based on the requirement that the plaintiff meet a higher standard at the pleading stage, was for that reason erroneous.

## Conclusion

For all of the foregoing reasons, Plaintiffs respectfully submit to the Court that the Statement of Interest of the United States is entitled to no particular deference, and in any event adds nothing of substance to the arguments already put forward by Defendants.  Because those arguments are unavailing, as demonstrated in Plaintiffs' earlier submissions, Defendants' Motion to Dismiss should be denied, and the case scheduled for further proceedings.

Respectfully submitted,

/s/ *Steven M. Schneebaum*

_____

| | |
|---|---|
| Of counsel: | Steven M. Schneebaum (D.C. Bar No. 956250) |
| Ralph G. Steinhardt | STEVEN M. SCHNEEBAUM, P.C. |
| Rodney Dixon, Q.C. | 1776 K Street, N.W.; Suite #800 |
| Haydee Dijkstal | Washington, D.C. 20006 |
| Sehriban Dogan | Tel: (202) 742-5900 |
| Cynthia L. McCann | Fax: (202) 449-3835 |
| | E-mail: sms@smslawdc.com |
| Dated:  December 12, 2016 | Counsel of Record for Plaintiffs |

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of December, 2016, I filed the foregoing Plaintiffs' Response to the Statement of Interest of the United States with the Court through its ECF system, thereby effecting service on counsel of record for Defendants:

John B. Bellinger, III, Esq.
Robert N. Weiner, Esq.
Robert A. DeRise, Esq.
ARNOLD & PORTER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001

and

R. Reeves Anderson, Esq.
ARNOLD & PORTER LLP
370 Seventeenth Street
Suite 4400
Denver, CO 80202

/s/ *Steven M. Schneebaum*
_____
Steven M. Schneebaum